## SUPREME COURT — APPELLATE DIVISION — FIRST DEPARTMENT.

### June 2, 1922.

## THE PEOPLE v. EDWIN P. KILROE, IMPL'D WITH NAPOLEON ARTHUR BOURASSA AND LOUIS E. SWARTS.

(201 App. Div. 549.)

(1) CONSPIRACY TO AID IN COMPOUNDING FELONY—VERDICT OF GUILTY NOT AGAINST WEIGHT OF EVIDENCE—CONDUCT OF TRIAL JUDGE AND CHARGE TO JURY PREJUDICED AND REQUIRE NEW TRIAL.

In a prosecution for a conspiracy to aid in compounding a felony, the felony being bigamy, although an examination of all the evidence shows that a verdict of guilty cannot be set aside as against the weight of evidence, nevertheless, a new trial must be granted, where it appears that the evidence given upon the trial was entirely circumstantial and that the presiding justice, in charging the jury, strongly emphasized the wrong done the complainant in the bigamy case, who was the last woman who had married the alleged bigamist and who, upon the theory of the prosecution, had desired the compounding of the felony in order that she might receive a money settlement from the alleged bigamist, and that he indicated to the jury that they might consider not only the evidence but also "the suggestion of everything in this case that is possible," and failed to make clear to the jury that no inference whatever could be drawn

from the absence from the trial of the alleged bigamist, over whom the defendants on trial had no control; and it further appears that the presiding justice during the course of the trial asked many questions, unnecessarily, from which only one inference was possible and that inference pointed to the guilt of the accused.

(2) SAME.

In a case resting solely upon circumstantial evidence, the right of the jury to draw inferences from facts should be clearly defined.

(3) SAME—JUDGE SHOULD NOT MAKE HIS PERSONAL CONVICTIONS APPARENT TO JURY.

It is a general rule that, upon the trial of a criminal action, the jury should be left free to determine the questions submitted without indication on the part of the court as to the court's conviction of the guilt or innocence of the accused.

(4) TRIAL—WITNESSES SHOULD BE EXAMINED BY COUNSEL AND JUDGE SHOULD NOT, AS A RULE, INTERRUPT.

Where able counsel are trying a case the examination of the witnesses should not be taken from them, except under unusual circumstances, since where many interruptions are made and questions asked by the court, an impression is likely to be left with the jury as to the conviction of the court upon the question of guilt.

SEPARATE appeals by the defendants, Edwin P. Kilroe and Louis E. Swarts, from a judgment of the Supreme Court, rendered on the 12th day of April, 1921, convicting them, under section 580 of the Penal Law, of a conspiracy to do an act for the perversion or obstruction of justice or of the due administration of the laws.

*Olcott, Bonynge, McManus & Ernst* (*Neilsen Olcott,* of counsel; *William M. K. Olcott,* with him on the brief), for the appellant Kilroe.

*Louis E. Swarts,* in person (*Siegfried F. Hartman,* of counsel; *Henry Brill,* with him on the brief), for the appellant Swarts.

*Charles D. Newton, Attorney General (William Rand, of counsel; Walter S. Hilborn, Special Deputy Attorney General, with him on the brief), for the respondent.*

SMITH, J.:

The defendants have been convicted of a violation of section 580 of the Penal Law of the State in obstructing the administration of justice by conspiring to aid·in the compounding of a felony.    On the 17th day of February, 1915, Napoleon Arthur Bourassa was married in the county of Kings to one Helene Montrose St. Marie.    She is named at times through the evidence as Helene Montrose.    Upon October 30, 1919, Bourassa was arrested and held in the Magistrate's Court upon a charge of the crime of bigamy upon the complaint that at the time of his marriage to the said Helene Montrose he had a wife living, to wit, one Mary Coyne.    Upon the investigation of this criminal charge it appeared that it was claimed that prior to his marriage with Mary Coyne he had been married to one Alice Normandin, who was living at the time of his marriage to Mary Coyne.    The defendant Kilroe made some effort to obtain proof of the marriage of Bourassa to Mary Coyne, and together with Helene Montrose Bourassa he visited one Mrs. Joyce, who was the sister of Mary Coyne.    When this prosecution of Bourassa for bigamy was commenced, Helene Montrose, as complainant, had as her attorneys the firm of Burger & Burger.    During the prosecution the defendant Swarts was substituted as her attorney.    Swarts had for a number of years been the law partner of the defendant Kilroe, and by appointment met Helene Montrose and Kilroe in a restaurant, took lunch and talked over the proceeding.    Helene Montrose had commenced an action either for divorce or for annulment of her marriage.    Alimony had been awarded in said action in an amount to which Bourassa was objecting and she was attempting to settle her civil claim against Bourassa.

An offer was made for the payment of $9,000, which offer was thereafter raised to $12,000, and finally $13,000 was paid to her by Bourassa.    Of this amount Helene Montrose received $9,000, Burger & Burger received $1,500, and Swarts received $2,500.    Most of these negotiations between the representative of Bourassa and the representative of Helene Montrose for the settlement of their civil differences occurred in the criminal court building and some in Kilroe's office, and Kilroe himself made complaint to Berger that Berger was making trouble by demanding too much money for the services which he had rendered to Helene Montrose, which services had extended for a period of over two years prior to the final settlement of the case. Kilroe denies having had anything whatever to do with the settlement of the civil action or with the payment of the moneys thereupon and denies that he received any part of the moneys that were paid, and the fact is conceded in the case that he did not receive any part thereof.    Kilroe claims that he was unable to get proof of the marriage of Bourassa to Mary Coyne or to Alice Normandin.    Mrs. Joyce refused to aid him and he could not get the full cooperation of Helene Montrose.    The date of the hearing upon the bigamy charge was adjourned from time to time and the charge was finally withdrawn upon motion of Kilroe, who was the assistant district attorney, upon the same day that the moneys were paid by Bourassa to Swarts or the representative of Helene Montrose.    In fact, part of the moneys were paid in the court room at the time that the proceedings were discontinued.    I am satisfied that the verdict cannot be set aside as against the weight of evidence.

The more difficult question is whether each of the defendants has had a fair trial uninfluenced by other than legal considerations bearing directly upon his guilt.    The evidence was entirely circumstantial.    The People's proof must establish the commission of the crime beyond a reasonable doubt and the courts will not sustain a conviction where the verdict establish-

ing defendants' guilt has been influenced by any improper or irrelevant considerations.

The defendants strongly insist that they have been denied a fair trial of the charges against them and that the trial judge so placed before the jury his personal conviction of the defendants' guilt as to preclude a fair consideration by the jury of the facts which are required to be established before a verdict of guilty could have been rendered. Among other things appearing in the charge of the court we find the following: " This is not a case of one individual against another. This is not a case where the wrong, if any, to Helene Montrose St. Marie can be righted if that wrong ever could be. You are not sitting in judgment upon the question of whether she had received adequate pecuniary compensation for a wrong which it may be no human medium of exchange can ever right. This is a question as to the violation of the laws of the State of New York and the rights of the whole People of the State of New York.

" If by reason of the acts of these defendants you are satisfied, or if you are satisfied beyond a reasonable doubt that the acts of the defendants have interfered, have obstructed or perverted justice, and interfered with the due administration of the law, it is the whole People of the State of New York that are affected. If you believe the evidence in this case,—I would not say the evidence—but the evidence *and the suggestion of everything in this case that is possible,* there is without dispute a woman, who as counsel said, is now neither maid, wife nor widow, but who fortunately has not borne a child; there is another woman deserted after bearing a child. I see you shaking your head, Mr. Proskauer, and I was wondering whether you did so.

" Mr. Proskauer: I am in silent communication with Mr. Rand. I would prefer, with your Honor's permission, not to take the task of answering specific interrogation, because it is

impossible for me in justice to my client, to do so in the light of your Honor's whole charge.

"The Court (continuing): And the suggestion also appears that some one in Canada married Bourassa. Leaving out of consideration suggestions as to the earlier relations, coming right down to the last, can there be any doubt under our system of social law, that a great wrong was done to the People of the State of New York in corrupting the sanctity of a marriage relation by Bourassa when he married, went through the form of marriage, with the witness, Mrs. Montrose Bourassa? So that this is not a question of parties adjusting money differences, such as for instance, the larceny of money. It is not a question of parties accepting restitution, of parties adjusting an embezzlement or a forgery charge, mere personal controversies having a criminal aspect in which it might be claimed that only the parties directly interested were affected, but if this crime has been committed, it seems to be conceded that it has been, whether the crime is to be based upon the prior marriage to Miss Coyne or the prior marriage to someone in Canada, that affects clearly the rights of the People of the State, the rights of the family, the rights of legitimacy, and if, for the purpose of interfering with punishment for such a crime the parties shall pay money, you see how seriously the interests of the whole People of the State are affected. I do not say that is the case, but I do say if that is so, this is clearly a case where there should be no question of the whole People being affected. But on the other hand, gentlemen, unless it has been established that these defendants did act to accomplish such purpose, no sense of sympathy for Mrs. Montrose Bourassa, no sense of the enormity of any wrong Mrs. Bourassa may have had done to her, if these defendants did not conspire to interfere with the administration of justice, unless you are satisfied of that beyond a reasonable doubt, the defendants are entitled to an acquittal, and it is your duty to give it." The defendants were

convicted and their only punishment was the sentence to pay a fine of $500 each.

This charge threw into the balance against the defendants the duty of a punishment for the great wrong committed against Helene Montrose, and this, as I view it, improperly, because upon the theory of the prosecution itself, the crime of the compounding of this felony, for which the defendants have been convicted was committed upon the desire and request of Helene Montrose and in her interest that she might receive such compensation as was possible to be obtained for the wrong thus committed. Granting all that can be pictured or that was pictured as to the enormity of the crime of which Bourassa was guilty, the enormity of that crime as against Helene Montrose was not chargeable to defendant Kilroe. His only fault as against her was in the failure to prosecute for the crime at her request and in her interest, and the impressive charge thus made by the court cannot be said to have been without influence in the rendition of the verdict of guilty. Not only does the court appear to present the enormity of this crime against Helene Montrose as is presented by the evidence, but he charges that if they believe the evidence in this case, " I would not say the evidence—but the evidence *and the suggestion of everything in this case that is possible,* there is without dispute a woman, who as counsel said, is now neither maid, wife nor widow, but who fortunately has not borne a child." The jury is directed that they may consider not only everything that is in the case as presented by the evidence, but " the suggestion of everything in this case that is possible," which is to my mind a clear invasion of the rights of the defendants to a fair presentation by the court of the issue of their guilt in the charge to the jury. It is true that this was to an extent modified upon request of counsel for the defendant Swarts. But the mischief had been done. It is a matter of grave doubt whether it could be undone by the charge thereafter made as requested, that the present

condition of Helene Montrose had nothing to do with the defendant's guilt.

Again, just before the court charged the jury the question arose as to the inference which the jury might draw from the absence of Bourassa from the trial, as he did not appear to defend, and the following occurred: " The Court: Do not get into a discussion as to what is the only plain inference. If there is any inference to be drawn, the jury are the only ones who can draw it. Now the question as to whether any inference is to be drawn from the failure of Bourassa to be present is one that I don't think the court can pass upon. I think the jury are the only ones who can determine whether there is any inference whatever to be drawn, and if so, what it is. I will say to the jury now that counsel for these defendants claim that no inference can be drawn from his absence. I shall leave it to you as to whether any inference can be drawn from that. Mr. Neilsen Olcott: Against the defendant? The Court: If there is any. That of course, will depend—I don't say will— may depend on whether the jury believe whether first there was a conspiracy, and second, whether Bourassa was one of the conspirators. Mr. Proskauer: I shall not detain you any longer further than to permit me to take an exception to your refusal to tell the jury that as a matter of law no inference can possibly be drawn against these men by reason of Bourassa's absence. Mr. Neilsen Olcott: I join in that exception. Mr. Rand: If stated that way, probably your Honor should tell them that that was not what I said. Mr. Proskauer: That is the way I understood it, and that is the way I ask it. I shall urge certainly to the best of my ability and with such strenuousness as I know how— The Court: While I am in some doubt as to whether that is a correct statement, I will charge the jury that as a matter of law no inference is to be drawn against the defendants from the nonappearance of Bourassa. Mr. Rand: In other

words, I did not mean to suggest that they were better able to get him than I was."

It will be borne in mind from this quotation that the court at first left it to the jury to say whether any inference could be drawn against the defendants from the fact that Bourassa did not appear as a witness upon the trial. To this exception was taken by the defendants' counsel. The court then modified the charge to the effect that it could not be said that as a matter of law any such inference could be drawn, still leaving to the jury, apparently, their right to pass upon the question as a fact whether such an inference might be drawn as against the defendants. The defendants, of course, took no exception to this modification, because the modification was to an extent in their favor, but the exception still remained to the ruling that had been before made in the presence of the jury to the effect that they might give effect to the absence of Bourassa as an inference against the defendants. That the absence of Bourassa from the trial could not be considered as matter of law or of fact as prejudicing the defendant hardly needs discussion. He was not under the control of the defendants, nor was there any pretense that the defendants had any power to procure his presence. The charge of the court that he was in some doubt as to whether the defendants were chargeable or not, nevertheless, he would charge the jury that as matter of law no inference was to be drawn against the defendants from the nonappearance of Bourassa, was not such an unqualified withdrawal of the direction first given by which the defendant could be charged by the jury with such an inference as was the right of the defendants. They were entitled to the charge both as matter of law and as matter of fact that defendants had no such power or control over Bourassa as to raise any presumption or inference against them by the failure of Bourassa to appear. The statement of the court that he was in some doubt as to the law impaired largely the charge made in connection with that statement that

they were to draw no inference as matter of law against the defendants for such nonappearance. It may be argued by the People that the whole controversy as above quoted shows that the right of the jury to draw an inference was entirely withdrawn as matter of law and as matter of fact and that it was so understood by counsel. The inference against the defendants as a matter of law was clearly withdrawn, but the right to draw the inference as matter of fact was not in explicit terms withdrawn from the jury. In a case resting only upon circumstantial evidence, the right of the jury to draw inferences from facts should be clearly defined, so that there is no possibility of doubt in the minds of the jury as to the facts upon which the verdict must be based.

The defendants further complain that all through the trial, by the activity of the court in asking questions, and by the nature of the questions asked and the remarks made in characterizing the testimony of witnesses and the criticism of counsel, the defendants were unduly prejudiced in their defense. It is a general rule that the court should not throw his personal convictions into the scales by which the defendant's guilt is to be weighed and that the jury should feel free to determine the questions submitted without indication on the part of the court as to the court's conviction of the guilt or innocence of the accused. This general rule may be subject in some cases to exceptions. Where many interruptions are made and questions asked by the court, it is humanly impossible to leave the jury without an impression of the convictions of the trial judge upon the question of guilt. Where able counsel are trying a case the examination of the witnesses should not be taken from them, unless for the purpose of making clear some point that has been omitted, and even then if attention were called to the point, the matter could be clarified by questions from the counsel. Many questions were asked during the trial of this case unnecessarily by the trial judge from which only one infer-

ence was possible, and that inference pointed to the guilt of the accused, and the impression thus conveyed can seldom be wholly removed by any charge of the court, howsoever explicit, to disregard any opinion which they may think the judge entertains upon any question involved. Upon a full examination of the evidence and of the record of the trial, I am of the opinion that the accused did not have the fair trial contemplated by our law and that the verdict was not unaffected by a compelling influence by the court from which it is the settled policy of our law to safeguard a defendant charged with crime.

The judgment of conviction should be reversed and a new trial granted.

DOWLING, LAUGHLIN, MERRELL, and GREENBAUM, JJ., concur.

Judgment reversed and new trial granted. Settle order on notice.